FILED

2013 MAY -3 PM 3:14

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2013 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. **CR13-0313** |
| Plaintiff, | **I N D I C T M E N T** |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 2(b): Causing an Act to be Done; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i): Laundering Monetary Instruments; 18 U.S.C. § 1028A: Aggravated Identity Theft; 18 U.S.C. § 982(a)(7), 21 U.S.C. § 853: Forfeiture] |
| ERIC MKHITARIAN, | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.   Defendant ERIC MKHITARIAN ("MKHITARIAN") assisted in

the operation of Orthomed Appliance, Inc. ("Orthomed"), a

1  purported supplier of durable medical equipment ("DME") located
2  in Los Angeles, California.
3      2.    Between on or about April 10, 2009, and on or about
4  February 15, 2011, Orthomed submitted to Medicare claims totaling
5  approximately $1,584,640 for DME and related services, and
6  Medicare paid Orthomed approximately $994,036 on those claims.
7      3.    Between on or about April 10, 2009, and on or about
8  February 15, 2011, defendant MKHITARIAN caused funds in excess of
9  approximately $622,228.38 to be withdrawn from Orthomed's
10  corporate bank account (number xxxxx0774) at Bank of America
11  (the "Orthomed BoA Account").
12     The Medicare Program
13      4.    Medicare was a federal health care benefit program,
14  affecting commerce, that provided benefits to individuals who
15  were over the age of 65 or disabled.  Medicare was administered
16  by the Centers for Medicare and Medicaid Services ("CMS"), a
17  federal agency under the United States Department of Health and
18  Human Services ("HHS").
19      5.    CMS contracted with private insurance companies to
20  (a) certify DME providers for participation in the Medicare
21  program and monitor their compliance with Medicare standards;
22  (b) process and pay claims; and (c) perform program safeguard
23  functions, such as identifying and reviewing suspect claims.
24      6.    Individuals who qualified for Medicare benefits were
25  referred to as Medicare "beneficiaries."  Each Medicare
26  beneficiary was given a Health Identification Card containing a
27  unique identification number ("HICN").
28

7.   DME companies, physicians, and other health care providers that provided medical services that were reimbursed by Medicare were referred to as Medicare "providers."

8.   To obtain payment from Medicare, a DME company first had to apply for and obtain a provider number.  By signing the provider application, the DME company agreed to abide by Medicare rules and regulations.

9.   If Medicare approved a provider's application, Medicare would assign the provider a Medicare provider number, enabling the provider (such as a DME company) to submit claims to Medicare for services and supplies provided to Medicare beneficiaries.

10.  Most DME providers, including Orthomed, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

11.  From in or about October 2006 onward, Noridian Administrative Services ("Noridian") processed and paid Medicare DME claims in Southern California.

12.  Medicare paid DME providers only for DME that was medically necessary to the treatment of a beneficiary's illness or injury, was prescribed by a beneficiary's physician, and was provided in accordance with Medicare regulations and guidelines that governed whether a particular item or service would be paid by Medicare.

13.  To bill Medicare for DME it provided to a beneficiary, a DME provider was required to submit a claim (Form 1500) to Noridian.  Medicare required claims to be truthful, complete, and not misleading.  In addition, when a claim was submitted, the

3

1 provider was required to certify that the services or supplies
2 covered by the claim were medically necessary.

3     14. Medicare required a claim for payment to set forth,
4 among other things, the beneficiary's name and HICN, the type of
5 DME provided to the beneficiary, the date the DME was provided,
6 and the name and unique physician identification number ("UPIN")
7 of the physician who prescribed or ordered the DME.

8     15. Medicare had a co-payment requirement for DME.
9 Medicare reimbursed providers 80% of the allowed amount of a DME
10 claim and the beneficiary was ordinarily obligated to pay the
11 remaining 20%.

12 B.   <u>THE OBJECT OF THE CONSPIRACY</u>

13     16. Beginning on or about April 10, 2009, and continuing
14 through on or about February 15, 2011, in Los Angeles County,
15 within the Central District of California, and elsewhere,
16 defendant MKHITARIAN, together with others known and unknown to
17 the Grand Jury, knowingly combined, conspired, and agreed to
18 commit health care fraud, in violation of Title 18, United States
19 Code, Section 1347.

20 C.   <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

21     17. The object of the conspiracy was carried out, and to be
22 carried out, in substance, as follows:

23         a. Defendant MKHITARIAN and his co-conspirators would
24 arrange for a straw purchaser who used the name "J.L." to be the
25 owner of record for Orthomed.

26         b. On or about April 10, 2009, J.L. or another co-
27 conspirator purporting to be J.L. would execute legal documents
28 for the purchase of Orthomed. The former owners would be paid

4

1   $15,000 for the purchase of Orthomed.   As a result of this

2   transaction, "J.L." would become the owner of record of Orthomed.

3               c.    On or about April 16, 2009, J.L. or another co-

4   conspirator purporting to be J.L. would open the Orthomed BoA

5   Account.   J.L. or another co-conspirator purporting to be J.L.

6   would maintain sole signature authority over this account.

7               d.    On or about April 22, 2009, J.L. or another co-

8   conspirator purporting to be J.L. would execute and submit an

9   electronic funds transfer agreement ("EFT") to Medicare,

10  requesting that all future reimbursements from Medicare be

11  directly deposited into the Orthomed BoA Account.

12              e.    On or about July 13, 2009, J.L or another co-

13  conspirator purporting to be J.L. would execute and submit an

14  application to Medicare to obtain and maintain a Medicare

15  provider number for Orthomed.   This application would request an

16  effective date of April 10, 2009.

17              f.    On or about January 28, 2010, J.L. or another co-

18  conspirator purporting to be J.L. would file a Statement of

19  Information with the State of California, giving notice of

20  Orthomed's recent change in ownership to J.L.   This statement,

21  which was signed by J.L. or another co-conspirator purporting to

22  be J.L., would identify J.L. as Orthomed's Chief Executive

23  Officer ("CEO"), Secretary, Chief Financial Officer ("CFO"), sole

24  Officer/Director, and Registered Agent.

25              g.    Once J.L. or another co-conspirator purporting to

26  be J.L. executed the above documentation on behalf of Orthomed,

27  defendant MKHITARIAN and his co-conspirators would submit, and

28  cause to be submitted, false and fraudulent claims to Medicare

for DME and related services that were neither medically necessary nor provided by Orthomed.

h.   As a result of the co-conspirators' submission of false and fraudulent claims, Medicare would make payments to the Orthomed BoA Account totaling approximately $994,039.

i.   Defendant MKHITARIAN would then withdraw, and cause the withdrawal of, cash proceeds from the Orthomed BoA Account through a series of checks written in amounts less than $10,000 to fictitious individuals.

k.   Defendant MKHITARIAN would also use the Orthomed debit card to make purchases using money from the Orthomed BoA Account.

COUNTS TWO THROUGH SEVEN

[18 U.S.C. §§ 1347, 2(b)]

A.   INTRODUCTORY ALLEGATIONS

18.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 above of this Indictment as though set forth in their entirety here.

B.   THE SCHEME TO DEFRAUD

19.   Beginning on or about April 10, 2009, and continuing through at least on or about February 15, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant MKHITARIAN, together others known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, a scheme and artifice: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.   MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

20.   The fraudulent scheme operated, in substance, as described in paragraph 17 above of this Indictment, which is hereby incorporated by reference as though set forth in its entirety here.

D.   THE EXECUTION OF THE FRAUDULENT SCHEME

21.   On or about the dates set forth below, within the Central District of California and elsewhere, defendant

7

MKHITARIAN, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the fraudulent scheme described above, knowingly and willfully caused to be submitted to Medicare for payment the following false and fraudulent claims primarily for orthotics, including back, neck, and ankle braces:

| COUNT | BENEFICIARY | CLAIM NUMBER | APPROXIMATE DATE SUBMITTED | APPROXIMATE AMOUNT OF CLAIM |
|-------|-------------|--------------|----------------------------|-----------------------------|
| TWO | M.A. | 10355809779000 | 10/05/10 | $1,069 |
| THREE | R.B. | 10363848832000 | 10/26/10 | $756 |
| FOUR | T.D. | 11004810327000 | 11/06/10 | $1,542 |
| FIVE | E.D. | 11005835343000 | 11/12/10 | $253 |
| SIX | E.N. | 11006845799000 | 11/15/10 | $788 |
| SEVEN | O.V. | 11010876044000 | 11/22/10 | $1,080 |

COUNT EIGHT

[18 U.S.C. § 1956(h)]

A.   INTRODUCTORY ALLEGATIONS

22.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15, and 17 above of this Indictment as though set forth in their entirety here.

23.   A co-conspirator known to the Grand Jury ("CC1") managed activities at a check cashing store ("the Store") in Los Angeles, California.   Once Medicare paid Orthomed for its purported provision of DME and related services, defendant MKHITARIAN utilized CC1 and the Store to cash, and provide him with the proceeds of, Orthomed checks drawn from the Orthomed BoA Account.

B.   THE OBJECT OF THE CONSPIRACY

24.   Beginning at least on or about January 4, 2011, and continuing through at least on or about February 10, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant MKHITARIAN, together with CC1 and others known and unknown to the Grand Jury, knowingly combined, conspired, and agreed to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

C.   THE MANNER AND MEANS OF THE CONSPIRACY

25.   The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

a.   Defendant MKHITARIAN and his co-conspirators would submit, and cause the submission of, false and fraudulent claims to Medicare on behalf of Orthomed for DME and related services that were neither medically necessary nor provided.

9

1         b.    Through the submission of these false and
2 fraudulent claims, defendant MKHITARIAN and his co-conspirators
3 would cause Medicare to make payments to the Orthomed BoA
4 Account.

5         c.    After Medicare began to make these payments to the
6 Orthomed BoA Account, defendant MKHITARIAN would provide CC1 with
7 presigned checks from the Orthomed BoA Account.

8         d.    Defendant MKHITARIAN would instruct CC1 to fill in
9 as the payee of the Orthomed checks the names of individuals who
10 defendant MKHITARIAN knew to be fictitious.  Defendant MKHITARIAN
11 would instruct CC1 to cash the checks at the Store, and then
12 provide the cash directly back to defendant MKHITARIAN.

13         e.    Through CC1 and the Store, defendant MKHITARIAN
14 would cash approximately $622,228.38 in checks drawn upon the
15 Orthomed BoA Account, which represented a portion of the proceeds
16 of the health care fraud, in violation of Title 18, United States
17 Code, Sections 1349 and 1347, as charged in Counts One through
18 Seven of this Indictment.

19         f.    These transactions concealed and disguised the
20 nature, location, source, ownership, and control of the proceeds
21 of the health care fraud by, among other means: (a) making it
22 appear that money from the Orthomed BoA Account was being paid to
23 the fictitious individuals named on the checks, when in fact the
24 money was being paid to defendant MKHITARIAN; and (b) making it
25 appear that J.L. owned and controlled the money in the Orthomed
26 BoA Account, when in fact defendant MKHITARIAN owned and
27 controlled the money in the account.

28

COUNTS NINE THROUGH THIRTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

26.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15, 17 and 23 of this Indictment as though set forth in their entirety herein.

27.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant MKHITARIAN, together with CC1 and others known and unknown to the Grand Jury, knowing that the property involved in each of the financial transactions described below represented the proceeds of some form of unlawful activity, conducted, and willfully caused others to conduct, the following financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, namely conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347, knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity:

| COUNT | DATE POSTED | MONETARY TRANSACTION |
|-------|-------------|----------------------|
| NINE | 1/6/11 | Cashing of check #554 for $9,700.00, drawn upon Orthomed's BoA Account and written to V.G. |
| TEN | 1/6/11 | Cashing of check #560 for $9,123.50, drawn upon Orthomed's BoA Account and written to A.L. |
| ELEVEN | 1/12/11 | Cashing of check #556 for $9,714.30, drawn upon Orthomed's BoA Account and written to S.S. |

| COUNT | DATE POSTED | MONETARY TRANSACTION |
|---|---|---|
| TWELVE | 1/26/11 | Cashing of check #578 for $9,349.61, drawn upon Orthomed's BoA Account and written to C.M. |
| THIRTEEN | 1/26/11 | Cashing of check #579 for $9,391.00, drawn upon Orthomed's BoA Account and written to A.M. |

12

COUNTS FOURTEEN THROUGH NINETEEN

[18 U.S.C. §§ 1028A, 2(b)]

28.  The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 15 and 17 of this Indictment as though set forth in their entirety herein.

29.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant MKHITARIAN did knowingly transfer, possess, and use, and willfully cause others to knowingly transfer, possess, and use, without lawful authority, a means of identification that defendant MKHITARIAN knew belonged to another person, during and in relation to a felony violation of Title 18, United States Code, Sections 1349 and 1347, as alleged in Counts One through Seven of this Indictment, to wit: names, dates of birth, and Medicare numbers of the Medicare beneficiaries set forth below.

| COUNT | MEANS OF IDENTIFICATION | APPROXIMATE DATE |
|---|---|---|
| FOURTEEN | Beneficiary M.A.'s name, date of birth, and Medicare number XXXXXX262M | 10/05/10 |
| FIFTEEN | Beneficiary R.B.'s name, date of birth, and Medicare number XXXXXX871M | 10/26/10 |
| SIXTEEN | Beneficiary T.D.'s name, date of birth, and Medicare number XXXXXX506A | 11/06/10 |
| SEVENTEEN | Beneficiary E.D.'s name, date of birth, and Medicare number XXXXXX422M | 11/12/10 |

13

| COUNT | MEANS OF IDENTIFICATION | APPROXIMATE DATE |
|---|---|---|
| EIGHTEEN | Beneficiary E.N.'s name, date of birth, and Medicare number XXXXXX183A | 11/15/10 |
| NINETEEN | Beneficiary O.V.'s name, date of birth, and Medicare number XXXXXX330M | 11/22/10 |

14

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(7) and 21 U.S.C. § 853]

30.   The Grand Jury hereby realleges and incorporates by reference Counts One through Seven of this Indictment as though fully set forth herein, for the purpose of alleging forfeiture, pursuant to the provisions of Title 18, United States Code, Section 982(a)(7).

31.   Counts One through Seven of this Indictment allege acts or activities constituting federal health care fraud offenses pursuant to Title 18, United States Code, Sections 1347, 2(b) and 1349.   Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of a federal health care fraud offense, defendant MKHITARIAN shall forfeit to the United States of America:

a.   All right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense; and/or

b.   A sum of money equal to the total amount of gross proceeds derived from such offense.

32.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), a defendant so convicted shall forfeit substitute property, up to the value of the amount described in paragraph 31, if, by any act or omission of said defendant, the property described in paragraph 31, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to or deposited with a third party; has been placed beyond

15

1  the jurisdiction of this Court; has been substantially diminished
2  in value; or has been commingled with other property that cannot
3  be divided without difficulty.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1                    FORFEITURE ALLEGATION TWO

2            [18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853]

3        33.   The Grand Jury hereby realleges and incorporates by

4   reference Counts Eight through Thirteen of this Indictment as

5   though fully set forth herein, for the purpose of alleging

6   forfeiture, pursuant to the provisions of Title 18, United States

7   Code, Section 982(a)(1).

8        34.   Counts Eight through Thirteen of this Indictment allege

9   acts or activities constituting offenses involving money

10  laundering pursuant to Title 18, United States Code, Sections

11  1956(h), 2(b) and 1956(a)(1)(B)(i).   Pursuant to Title 18, United

12  States Code, Section 982(a)(1), upon conviction of a money

13  laundering offense, defendant MKHITARIAN shall forfeit to the

14  United States of America:

15            a.   All right, title and interest in any property,

16  real or personal, involved in such offense, or any property

17  traceable to such offense; and/or

18            b.   A sum of money equal to the total amount of

19  property involved in such offense.

20       35.   Pursuant to Title 21, United States Code, Section

21  853(p), as incorporated by Title 18, United States Code, Section

22  982(b)(1), a defendant so convicted shall forfeit substitute

23  property, up to the value of the amount described in paragraph

24  34, if, by any act or omission of said defendant, the property

25  described in paragraph 34, or any portion thereof, cannot be

26  located upon the exercise of due diligence; has been transferred,

27  sold to or deposited with a third party; has been placed beyond

28  the jurisdiction of this Court; has been substantially diminished

                              17

1  in value; or has been commingled with other property that cannot

2  be divided without difficulty.

3

4                            A TRUE BILL

5

6                            /s/

                          Foreperson

7

8

9  ANDRÉ BIROTTE JR.
United States Attorney

10  *Don*

   Dorothy C. Kim

11  Dep. chief, crim. Div. FCK

12  ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

13

14  RICHARD E. ROBINSON
Assistant United States Attorney
Chief, Major Frauds Section

15

16  BEN SINGER
Deputy Chief, Fraud Section
United States Department of Justice

17

18  BENTON CURTIS
Assistant Chief, Fraud Section
United States Department of Justice

19

20  ALEXANDER F. PORTER
Trial Attorney, Fraud Section
United States Department of Justice

21

22

23

24

25

26

27

28

                     18